**No. 25-4598**

# United States Court of Appeals for the Fourth Circuit

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLANT,

*v.*

NICHOLAS JOHN ROSKE,
DEFENDANT-APPELLEE.

*APPEAL FROM THE U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND,*
*NO. 22-CR-209, HON. DEBORAH L. BOARDMAN, PRESIDING*

## BRIEF OF AMERICA FIRST LEGAL FOUNDATION AS *AMICUS CURIAE* SUPPORTING APPELLANT AND VACATUR

Nicholas Barry
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
(202) 964-3721
nicholas.barry@aflegal.org

Christopher Mills
SPERO LAW LLC
557 East Bay St. #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

Counsel for *Amicus Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-4598 Caption: United States of America v. Nicholas John Roske

Pursuant to FRAP 26.1 and Local Rule 26.1,

America First Legal Foundation
(name of party/amicus)

who is amicus curiae, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Christopher Mills Date: June 24, 2026

Counsel for: America First Legal Foundation



Print to PDF for Filing

# TABLE OF CONTENTS

**Page**


Corporate Disclosure Statement .......... i

Table of Authorities .......... iv

Interest of *Amicus Curiae* .......... 1

Introduction .......... 2

Argument .......... 4

I. The district court improperly reduced Roske's sentence based on personal characteristics. .......... 5

A. The district court's focus on Roske's personal characteristics contravened equal protection principles. .......... 6

B. Consideration of race, sex, and gender identity is contrary to 18 U.S.C. § 3553. .......... 11

C. The Sentencing Guidelines make clear that characteristics unrelated to the crime are not relevant to sentencing. .......... 16

II. The district court's logic was faulty. .......... 18

Conclusion .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995)........................................6

*Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026)..................................................7

*Britton v. Rogers*, 631 F.2d 572 (8th Cir. 1980)......................................................6

*Chambers v. State of Fla.*, 309 U.S. 227 (1940)......................................................8

*Dennis v. United States*, 341 U.S. 494 (1951)................................................... 2, 22

*Doe v. Blanche*, 172 F.4th 901 (D.C. Cir. 2026)............................................ 10, 19

*Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315 (4th Cir. 2008).....5

*Gall v. United States*, 552 U.S. 38 (2007)..............................................................13

*Gitlow v. People of State of New York*, 268 U.S. 652 (1925)..................................2

*Griffin v. Illinois*, 351 U.S. 12 (1956)......................................................................8

*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020).............. 7, 9, 20

*Hughes v. United States*, 584 U.S. 675 (2018).......................................................18

*Lee v. Downs*, 641 F.2d 1117 (4th Cir. 1981)..........................................................9

*O.R. v. Greenville Cnty.*, 2026 WL 815913 (D.S.C. Mar. 19, 2026).......................7

*Oregon v. Mitchell*, 400 U.S. 112 (1970)...............................................................11

*Pitts v. Thornburgh*, 866 F.2d 1450 (D.C. Cir. 1989)..............................................8

*Rita v. United States*, 551 U.S. 338 (2007).............................................................12

*Roubideaux v. N. Dakota Dep't of Corr. & Rehab.*, 570 F.3d 966 (8th Cir. 2009)..9

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105 (1991)..........................................................................................11

*Stop Reckless Econ. Instability Caused by Democrats v. Fed. Election Comm'n*, 814 F.3d 221 (4th Cir. 2016)............................................................................6

*United States v. Carter*, 87 F.4th 217 (4th Cir. 2023)...............................................6

*United States v. Casillas-Montero*, 152 F.4th 306 (1st Cir. 2025)..........................14

*United States v. Ceasar*, 10 F.4th 66 (2d Cir. 2021)...............................................20

*United States v. Claybrooks*, 90 F.4th 248 (4th Cir. 2024) .....................................5

*United States v. Engle*, 592 F.3d 495 (4th Cir. 2010).............................................15

*United States v. Fitzpatrick*, 126 F.4th 348 (4th Cir. 2025) ...................... 13, 14, 15

*United States v. Howard*, 773 F.3d 519 (4th Cir. 2014).........................................15

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010)...........................................16

*United States v. Maples*, 501 F.2d 985 (4th Cir. 1974) ...........................................6

*United States v. Ressam*, 679 F.3d 1069 (9th Cir. 2012).......................................16

*United States v. Skrmetti*, 605 U.S. 495 (2025) ........................................ 10, 20, 21

*United States v. Thompson*, 130 F.4th 1158 (9th Cir. 2025) ..................... 15, 19, 20

*United States v. Virginia*, 518 U.S. 515 (1996) .......................................................9

*United States v. Zuk*, 874 F.3d 398 (4th Cir. 2017) ....................................... 4, 5, 14

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002) ....................................................8, 9

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. VI, cl. 2 ........................................................................................11

**STATUTES**

18 U.S.C. § 3551 ........................................................................................... 11, 12

18 U.S.C. § 3553 ...............................................iii, 3, 11, 12, 13, 14, 16, 17, 21, 22

18 U.S.C. § 3742 ..................................................................................................17

28 U.S.C. § 991 ....................................................................................................16

28 U.S.C. § 994 ....................................................................................................16

**OTHER AUTHORITIES**

Christian J. Bachmann et al., *Gender Identity Disorders Among Young People in Germany: Prevalence and Trends*, 2013–2022, 121 Deutsches Ärzteblatt Int'l 370 (2024)..........................................................................................................20

Executive Order 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025)...................................19

Fed. Bureau of Prisons, *Female Offenders*, https://perma.cc/WFR9-MLGK ...........8

*Guidelines for Psychological Practice with Transgender and Gender Nonconforming People*, 70 Am. Psychologist 832 (Dec. 2015), https://perma.cc/6FAS-676M ....21

Isabel Boyd et al., *Care of Transgender Patients: A General Practice Quality Improvement Approach*, 10(1) Healthcare (2022) ....20

Jason Rafferty, *Ensuring Comprehensive Care & Support for Transgender & Gender-Diverse Children & Adolescents*, 142 Pediatrics no. 4 (Oct. 2018), https://perma.cc/8PYT-CGUG ....22

Lisa Littman et al., *Detransition and Desistance Among Previously Trans-Identified Young Adults*, 53 Arch. Sexual Behavior 57 (2024)....20

*Trans Substantiation*, The Economist (Apr. 8, 2023)....20

U.S. Dep't of Just., *Transgender Offender Manual* (2022)....19

U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2024)....17

U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2025)....17

*Understanding Transgender People, Gender Identity and Gender Expression* (July 8, 2024), https://perma.cc/JPG8-HURU....21

## INTEREST OF *AMICUS CURIAE*

America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States by preventing executive overreach, ensuring due process and equal protection for every American citizen, and encouraging understanding of the law and individual rights guaranteed under the Constitution and laws of the United States.

America First Legal has a substantial interest in this case. In several areas, it has litigated against the dangerous assumption that men and women are interchangeable. For instance, it represents parents nationwide who are fighting, *inter alia*, to protect their daughters' physical safety, personal privacy, and access to sports and other educational opportunities. And as a participant in notice-and-comment rulemaking and an organization often engaged in litigation to protect the rule of law, it filed several briefs opposing prior attempts to negate biological sex via Title IX and Title VII regulations.[1]

[1] All parties consented to this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and, no person—other than *amicus curiae*, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

## INTRODUCTION

This case involves an attempt to assassinate a U.S. Supreme Court Justice for his perceived views. This attempt "endanger[s] the foundations of organized government" and "imperil[s]" the "existence" of our republic. *Gitlow v. People of State of New York*, 268 U.S. 652, 667 (1925). "[S]afeguarding" our "free and constitutional institutions is the very basis and mainstay upon which" our freedoms rest. *Id.* at 668. And "[t]he most tragic experience in our history is a poignant reminder that the Nation's continued existence may be threatened from within." *Dennis v. United States*, 341 U.S. 494, 520 (1951) (Frankfurter, J., concurring in the judgment). One "spark may kindle a fire that, smouldering for a time, may burst into a sweeping and destructive conflagration." *Gitlow*, 268 U.S. at 669.

Yet even though Nicholas Roske attempted to murder Justice Kavanaugh—arriving armed outside his family home in the middle of the night after weeks of planning—the district court drastically departed from the Sentencing Guidelines' recommendation of between 30 years and life in prison. The district court sentenced Roske to a hair over eight years in prison—less than a third of the *minimum* guideline recommendation.

A key aspect of the district court's rationale was that Roske—a biological male who grew up as a man—recently began identifying as a female. In slashing the sentence, the court "t[ook] into consideration" that Roske, "a transgender woman,"

could be "sent to a male-only [prison] facility" under a recent executive order. JA146. The court thus granted the defense's request based on Roske's "status as a transgender woman" to reduce the sentence. ECF No. 106, at 49.

This reliance on Roske's gender identity was improper. A defendant's personal characteristics, whether race, sex, religion, or gender identity, should not affect the appropriate sentence for a crime. Both the Constitution and federal statutes forbid changing a defendant's sentence because of irrelevant characteristics.

Equal protection principles govern criminal sentencing, and this Court has invoked heightened scrutiny for discrimination based on sex and gender identity. But the district court's decision was based on stereotypes about gender and a speculative forecast about prison conditions. At the same time, the court disregarded the government's significant interest in ensuring the safety of female prisoners. Other legal challenges are available to prison conditions that actually materialize, so cutting a sentence based on gender identity cannot satisfy heightened scrutiny.

Federal sentencing laws and guidelines confirm that personal characteristics like race, sex, and gender identity should not affect a proper sentence. Such protected characteristics cannot be prioritized under 18 U.S.C. § 3553, and focusing on them risks introducing sentencing disparities prohibited by law. Further, the Sentencing Guidelines have long made clear that sentencing should not be based on these characteristics. Focusing on the defendant's race, sex, or gender identity in

sentencing therefore contradicts the Constitution, federal statutes, and the Sentencing Guidelines.

Beyond these legal deficiencies, the district court's logic in letting an attempted Supreme Court assassin off easy based on a recent expression of gender identity was unreasonable on its own terms. First, the district court did not address the likelihood of prison policies changing—as they have repeatedly in recent years—much less available challenges to allegedly unlawful prison conditions. Second, gender identity—including Roske's—can and does change, and the district court did not assess whether Roske's present gender identity is likely to remain stable over the next eight to 30 years. Third, though the primary goal of federal sentencing is to ensure adequate deterrence, the district court ignored the ill incentives of giving defendants light sentences if they invoke a new gender identity.

The Court should vacate and remand for an appropriate resentencing.

## ARGUMENT

This Court considers "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Zuk*, 874 F.3d 398, 409 (4th Cir. 2017) (citation modified). "[A] major departure from the advisory range should be supported by a more significant justification than a minor one." *Id.* (citation modified). And a district court's focus

on a factor that "is questionably related to the defendant's criminal conduct" suggests an abuse of discretion. *Id.* at 410. Under the abuse-of-discretion standard, any "legal error, disorder of reason, severe lapse of judgment, [or] procedural failure" can be "always correct[ed]" by "a reviewing court." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008).

Here, the district court abused its discretion and imposed a substantively unreasonable sentence in multiple respects. Not only did the court's focus on Roske's gender identity contravene equal protection precedents and federal laws, but it also led to a drastic reduction in sentence (and reduced deterrence) based on speculation about future events.

## I. The district court improperly reduced Roske's sentence based on personal characteristics.

As this Court has explained, "[a] sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission." *United States v. Claybrooks*, 90 F.4th 248, 257 (4th Cir. 2024). Here, the court improperly focused on Roske's gender identity in deviating far below the guideline recommendation. Equal protection principles, federal statutes, and the Sentencing Guidelines all confirm that personal characteristics like race, sex, and gender identity are unsound bases for an appropriate sentence.

### A. The district court's focus on Roske's personal characteristics contravened equal protection principles.

Though the Fourteenth Amendment's Equal Protection Clause does not apply directly to the federal government, precedent holds that the Fifth Amendment imposes "indistinguishable" "equal protection obligations." *Stop Reckless Econ. Instability Caused by Democrats v. Fed. Election Comm'n*, 814 F.3d 221, 233 (4th Cir. 2016) (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995)). Like other branches of the government, a "sentencing court[]" must follow "the right of equal protection under the law." *United States v. Carter*, 87 F.4th 217, 225 (4th Cir. 2023); *see Britton v. Rogers*, 631 F.2d 572, 577 (8th Cir. 1980) ("[C]riminal sentencing is subject to the strictures of the equal protection clause.").

Equal protection generally prohibits classifying individuals for differential treatment based on race or sex, imposing heightened scrutiny for such classifications. In other words, both race and sex are generally "constitutionally impermissible factor[s]" in sentencing. *Carter*, 87 F.4th at 225; *see United States v. Maples*, 501 F.2d 985, 987 (4th Cir. 1974) ("[W]e deem the factor of sex an impermissible one to justify a disparity in sentences."). And under this Court's precedents, classifications based on gender identity are subject to the same scrutiny

as classifications based on sex.[2] A sentencing court thus presumptively violates the Constitution by sentencing based on race, sex, or gender identity.

Here, the defense expressly relied on Roske's "status as a transgender woman" in seeking a reduced sentence, and the district court obliged because Roske "is a transgender woman." ECF No. 106, at 49 (first quote); JA145 (second quote). The district court "t[ook] into consideration" the possibility that Roske, "a transgender woman, will be sent to a male-only [prison]." JA146. Presumably, another biological male who would be sent to male-only prison would not receive this "consideration." Only because Roske recently began identifying as transgender did the district court reduce the sentence.

That reliance on Roske's personal characteristics—subject to heightened scrutiny under this Court's precedents—was improper. Defendants should be sentenced to an appropriate sentence without regard to irrelevant factors like their skin color or sex. And letting such factors sway the sentence would undermine "the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every

---

[2] *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607, 613 (4th Cir. 2020). In *United States v. Skrmetti*, "the Supreme Court declined to consider whether" this view is correct, and this Court recently said that it "need not dwell on whether discrimination based on transgender status merits intermediate scrutiny" after *Skrmetti*. *Anderson v. Crouch*, 169 F.4th 474, 486 n.9, 487 n.10 (4th Cir. 2026). Courts in this circuit continue to apply *Grimm*. *See, e.g.*, *O.R. v. Greenville Cnty.*, 2026 WL 815913, at *13 (D.S.C. Mar. 19, 2026).

American court.'" *Griffin v. Illinois*, 351 U.S. 12, 17 (1956) (plurality op.) (quoting *Chambers v. State of Fla.*, 309 U.S. 227, 241 (1940)).

Further, disparate sentences based on personal characteristics do not generally serve any governmental interest, especially when the disparity contradicts the government's compelling interests in adequate deterrence and ensuring the well-being of all prisoners. Saving deterrence for later, consider the reasons behind "a pervasive characteristic of American prisons": "the separation of inmates on the basis of gender." *Pitts v. Thornburgh*, 866 F.2d 1450, 1458 (D.C. Cir. 1989). As this Court has explained, "each gender faces unique safety and security concerns of various degrees," which is why "females and males are housed separately" in federal prisons generally. *Veney v. Wyche*, 293 F.3d 726, 734 (4th Cir. 2002).

According to the Bureau of Prisons, "women in prison differ from their male counterparts in significant ways."[3] "For example, women are more likely to be primary caregivers for children, experience economic hardship, [face] employment instability, and have fewer vocational skills as compared with males."[4] They are also "more likely than men [to] have a history of trauma and abuse, which poses additional challenges."[5] Further, "[m]ost people . . . have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the

---

[3] Fed. Bureau of Prisons, *Female Offenders*, https://perma.cc/WFR9-MLGK.
[4] *Id.*
[5] *Id.*

other sex may be especially demeaning and humiliating." *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981). Sex separation thus advances "the important governmental objective of providing adequate . . . housing for women inmates." *Roubideaux v. N. Dakota Dep't of Corr. & Rehab.*, 570 F.3d 966, 975 (8th Cir. 2009). As Justice Ginsburg emphasized, "[t]he two sexes are not fungible; a community made up exclusively of one sex is different from a community composed of both." *United States v. Virginia*, 518 U.S. 515, 533 (1996) (citation modified). Roske does not appear to have disputed any of this.

Yet, disregarding these overriding governmental concerns, the district court viewed it as "harsh" for Roske to be placed with other biological males in a male prison. JA145. No doubt, many male prisoners would find conditions less "harsh" in a female prison. Among other reasons, "it is a well-documented reality that institutions for females generally are much less violent than those for males." *Veney*, 293 F.3d at 734. But *amicus* is unaware of any authority suggesting that male criminal sentences should be systematically reduced because of these "difficult conditions." JA146.

Nor did the district court point to "any evidence" supporting a differential sentence for Roske in particular. *Grimm*, 972 F.3d at 614. "[S]tereotypes or overbroad generalizations" are exactly what equal protection principles forbid as the basis for governmental action that classifies based on protected characteristics.

*United States v. Skrmetti*, 605 U.S. 495, 510 (2025). And Roske failed to show that a reduced sentence based on personal characteristics here is "substantially related" to any "important governmental objectives." *Id.* Roske's preference for easier confinement—a preference surely shared by all criminals—is not enough to justify discrimination in sentence length based on a protected characteristic. That is especially true when Roske's preferred placement would itself undermine an overriding governmental objective: the safety and well-being of female prisoners.

More fundamentally, the proper way to resolve disputes about the (potential) conditions of Roske's confinement is through a separate action about those conditions when (and if) they arise. *See, e.g.*, *Doe v. Blanche*, 172 F.4th 901, 909 (D.C. Cir. 2026) (noting similarly situated plaintiffs' equal protection and Eighth Amendment claims). There is no substantial governmental interest in reducing the *length* of Roske's sentence based on protected characteristics and speculation about future conditions. And the availability of a separate action to challenge conditions of confinement provides a more tailored way to address any governmental interest at stake.

In sum, the decision below impermissibly relied on stereotypes and evidence-free assumptions to drastically reduce the sentence of a criminal who came very close to assassinating a U.S. Supreme Court Justice. This disparate sentence based on Roske's protected characteristics violates core equal protection principles.

### B. Consideration of race, sex, and gender identity is contrary to 18 U.S.C. § 3553.

In reducing Roske's sentence based on protected characteristics, the district court seemed to rely on 18 U.S.C. § 3553(a)'s instruction to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in the statute. *See* JA146. Even if this statute purported to justify otherwise impermissible discrimination, it is doubtful that a *statute* can provide a sufficient excuse to disregard the *Constitution*. *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause). Such logic would "take[] the effect of the statute and posit[] that effect as the [government's] interest." *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 120 (1991) (citation modified). "If accepted, this sort of circular defense [would] sidestep judicial review of almost any statute, because it makes all statutes look narrowly tailored." *Id.*; *see Oregon v. Mitchell*, 400 U.S. 112, 295 (1970) (Stewart, J., concurring in part and dissenting in part) (doubting that "Congress has the power to determine what are and what are not 'compelling state interests' for equal protection purposes").

At any rate, § 3553 itself makes protected characteristics like race, sex, or gender identity generally irrelevant to sentence length. Federal criminal sentencing is governed by 18 U.S.C. ch. 227, and its directives and restrictions are mandatory. *See* 18 U.S.C. § 3551(b) ("An individual found guilty of an offense *shall* be sentenced, in accordance with the provisions of section 3553, to [probation, fine, or

a term of imprisonment]." (emphasis added)). When imposing a sentence, the court is required to consider:

> (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely, (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

*Rita v. United States*, 551 U.S. 338, 347–48 (2007) (summarizing the "basic sentencing objectives" of 18 U.S.C. § 3553(a)).

The "basic aims of sentencing" laid out in § 3553(a)(2) are of particular importance. *Id.* at 348; *see* 18 U.S.C. § 3551(a) (requiring sentences to "achieve the purposes set forth in [§ 3553(a)(2)]"); *id.* § 3553(a) (focusing on "the purposes set forth in [§ 3553(a)(2)]"). So, while all the § 3553(a) factors must be considered, the factors in subsection (a)(2) guide a court's assessment of the upper ("not greater than necessary") and lower ("sufficient") bounds for a proper sentence.

Race, sex, and gender identity are generally irrelevant to the § 3553(a)(2) factors. The defendant's personal characteristics are unrelated to the offense, so are not relevant to imposing a sentence that "reflect[s] the seriousness of" and "provide[s] just punishment for" the offense. 18 U.S.C. § 3553(a)(2)(A). Nor could sentencing disparately based on one of these factors "promote respect for the rule of law." *Id.* If anything, considering race, sex, or gender identity in sentencing does the opposite, tending to portray sentencing as biased against certain groups. Neither is

there evidence that sentencing based on these factors would promote "adequate deterrence," *id.* § 3553(a)(2)(B), or "protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). Subsection (D)—which requires consideration of the need for the sentence imposed to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"—is also not reasonably satisfied by a bare consideration of a protected characteristic, but must be a fact-bound determination in light of the defendant's specific needs. *See, e.g.*, *United States v. Fitzpatrick*, 126 F.4th 348, 354 (4th Cir. 2025) ("[T]he [sentencing] court failed to identify any evidence to support its sweeping conclusion that the Federal Bureau of Prisons could not manage [the defendant] given his mental condition.").

To be sure, district courts that depart from the Sentencing Guidelines are owed deference when their consideration of the "§ 3553(a) factors, *on a whole*, justif[ies] the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007) (emphasis added). But since protected characteristics like race, sex, or gender identity are encompassed by at most one subpart of one of the § 3553(a) factors ("characteristics of the defendant"[6])—and considering them does not serve any of the § 3553(a)(2)

[6] Given equal protection principles and the Sentencing Guidelines' longstanding rejection of characteristics like race and sex as permissible bases for sentencing, it is highly doubtful that the contextual meaning in § 3553(a) of "characteristics of the defendant" includes such characteristics.

factors—it is hard to conceive of a scenario in which prioritizing them is consistent with § 3553. And even if the district court frames the consideration in a way that emphasizes one of the § 3553(a)(2) factors—say, a need for medical care—that consideration still cannot outweigh all the other factors a court must consider.

Further, § 3553(a)(6)'s anti-disparity mandate independently counsels against the consideration of race, sex, or gender identity in sentencing, even when adjusting between the upper and lower bounds determined by § 3553(a)(2). The district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Since there can be no warrant for sentencing "similarly situated" people differently based on personal characteristics unrelated to the offense, *United States v. Casillas-Montero*, 152 F.4th 306, 328 (1st Cir. 2025), such characteristics should not be considered at all. Sentences that are determined based on the defendant's race, sex, or gender identity create exactly the disparities § 3553(a)(6) was designed to prevent. Yet "the court does not appear to have considered how such an extreme variance might contribute to unwarranted sentencing disparities." *Fitzpatrick*, 126 F.4th at 354.

This Court has held that "when a district court focuses so heavily on a single sentencing purpose only tangentially connected to a defendant's grave criminal misconduct, it risks abusing its discretion." *Zuk*, 874 F.3d at 410. Accordingly, this

Court has repeatedly vacated lopsided sentences like the one here. *See id.* at 410–11 (holding that the medical treatment for defendant's autism did not outweigh need for "punishment, deterrence, and respect for the law"); *Fitzpatrick*, 126 F.4th at 353 (holding sentence to be substantively unreasonable based on district court's overriding reliance on defendant's "history and personal characteristics"). Along these lines too, the Ninth Circuit has held that the fact that a criminal "is transgender, autistic, and has suffered prior trauma . . . may not be the sole basis for the chosen sentence." *United States v. Thompson*, 130 F.4th 1158, 1166 (9th Cir. 2025).

Other precedents confirm that the sentence here is substantively unreasonable. This Court vacated another sentence as substantively unreasonable when the district court "focused extensively on a single factor . . . at the expense of a reasoned analysis of other pertinent factors." *United States v. Howard*, 773 F.3d 519, 531 (4th Cir. 2014). Such a focus means (among other problems) that the sentence fails to "retain[] a semblance of consistency with similarly situated defendants." *Id.* That is true here, too: similar defendants who did not recently change their gender identity would presumably receive a heavier sentence.

In another case, the Court again vacated a sentence for "focusing so heavily" on one consideration. *United States v. Engle*, 592 F.3d 495, 504 (4th Cir. 2010). And the Court said that "an approach" that "depends on" a personal characteristic of the

defendant—in *Engle*, "the defendant's economic status"—"is impermissible." *Id.* at 505. The same applies to the district court's focus on Roske's gender identity.

Decisions from other circuits are in accord. *See, e.g.*, *United States v. Ressam*, 679 F.3d 1069, 1094, 1096–97 (9th Cir. 2012) (holding sentence to be substantively unreasonable based in part on district court's focus on defendant's religious devotion); *United States v. Irey*, 612 F.3d 1160, 1198–1203 (11th Cir. 2010) (holding sentence to be substantively unreasonable due to over-emphasis on defendant's personal characteristics, including an alleged "'illness' of pedophilia").

Thus, § 3553(a) refutes the district court's focus on Roske's gender identity in reaching its minimal sentence.

**C. The Sentencing Guidelines make clear that characteristics unrelated to the crime are not relevant to sentencing.**

The Sentencing Guidelines confirm what equal protection principles and § 3553(a) say about consideration of protected characteristics in sentencing. Congress established the United States Sentencing Commission with the purpose of "establish[ing] sentencing policies" that "provide certainty and fairness" and "avoiding unwarranted sentencing disparities." 28 U.S.C. § 991(b)(1). Congress directed the Commission to "assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders." *Id.* § 994(d).

Discharging this directive, the Sentencing Commission used identical language in declaring those five factors to be "not relevant in the determination of a sentence." U.S. Sent'g Guidelines Manual § 5H1.10 (U.S. Sent'g Comm'n 2024). Beyond this list of forbidden characteristics, the Commission stressed that "the most appropriate use of specific offender characteristics is to consider them not as a reason for a sentence outside the applicable guideline range," but instead for "other aspects" like adjusting the sentence within that range or selecting from among the "type[s] of sentences" available. *Id.* ch. 5, pt. H, introductory cmt. And the Commission emphasized that "in order to avoid unwarranted sentencing disparities the court should not give [specific offender characteristics] excessive weight." *Id.*[7]

Nothing in the Sentencing Guidelines suggests that it is appropriate to consider gender identity when determining a defendant's sentence, and doing so would be improper for the same reasons as considering race or sex. It is the kind of personal characteristic that is generally unrelated to the commission of a crime, so

[7] Effective November 1, 2025, the Sentencing Guidelines underwent a substantial revision including, *inter alia*, the "remov[al of] departures and policy statements relating to personal characteristics." U.S. Sent'g Guidelines Manual, at 1 (U.S. Sent'g Comm'n 2025). This change was not meant to repudiate the principles above, but to reflect the "growing shift away from the use of departures provided for within the Guidelines Manual in the wake of *Booker* and subsequent decisions." *Id.* And judges consider the Sentencing Guidelines in effect on the "date the defendant is sentenced." 18 U.S.C. § 3553(a)(4)(A)(ii); *see also id.* § 3742(g)(1) (on remand from an appellate court, the district court is required to apply the sentencing guidelines "in effect on the date of the previous sentencing of the defendant prior to the appeal").

focusing on it as a factor in sentencing undermines the purpose of certainty and fairness in the sentencing process. As with § 3553, "[a] principal purpose of the Sentencing Guidelines is to promote uniformity in sentencing imposed by different federal courts for similar criminal conduct," *Hughes v. United States*, 584 U.S. 675, 684 (2018) (citation modified), and reducing sentences based on gender identity undermines that goal.

* * *

In sum, the district court's consideration of Roske's gender identity to dramatically reduce the sentence here violates the Constitution and contradicts the will of Congress expressed both in statute and in the recommendations of the Sentencing Commission.

## II. The district court's logic was faulty.

Even on its own terms, the district court's reasoning was suspect. That reasoning depended on speculation about variables outside the court's control that could easily change within the next eight years—and certainly within the next 30 years, the minimum guideline recommendation. Federal prison policies have been in flux on the issue of gender identity, and individual inmates have challenged (successfully) the most recent policies. What's more, gender identity—including Roske's—can and does change, confirming the illogic of basing a sentence length now on hypothetical future prison policies paired with hypothetical future identity.

And the court ignored the ill incentives that its reasoning gives to criminal defendants to invoke a different gender identity to obtain sentence reductions—which would result in inadequate deterrence.

To begin, speculation about what federal prison transgender housing policy will look like over the next eight to 30 years "is improper" as a foundation for the district court's reasoning. *Thompson*, 130 F.4th at 1166 (explaining that the district court erred by relying on "speculation" about "BOP policy changes about housing transgender inmates"). The prior administration permitted biological men who identified as transgender to be housed in female prisons "on a case-by-case basis." U.S. Dep't of Just., *Transgender Offender Manual* §§ 5–6 (2022). The current administration directed executive branch officials to "ensure that males are not detained in women's prisons or housed in women's detention centers." Executive Order 14168 § 4(a), 90 Fed. Reg. 8615, 8616 (Jan. 20, 2025). That policy was enjoined in several cases, though some injunctions were eventually vacated. *E.g.*, *Doe*, 172 F.4th at 909, 919.

Given all these changes that occurred in less than a year, the district court unreasonably picked one policy and assumed that policy would necessarily govern federal prisons for the next 30 years—and further assumed that Roske could not mount the same type of challenge to this policy that others have. This crystal-ball approach to sentencing is error. *See United States v. Ceasar*, 10 F.4th 66, 82 (2d Cir.

2021) (holding that "very substantial downward variance from the Guidelines sentence" based on policies that "may never come into existence" "was unreasonable"); *see also Thompson*, 130 F.4th at 1166.

The district court also ignored the possibility that Roske will stop identifying as a transgender woman. This Court has said that "gender identity is formulated for most people at a very early age." *Grimm*, 972 F.3d at 612. Yet Roske did not start identifying as a transgender woman until "sometime in 2020," around age 24. JA125; *see* JA123. And even among those who identified as transgender from an early age, some will "'detransition' later in life—in other words, they begin to identify again with the gender that corresponds to their biological sex." *Skrmetti*, 605 U.S. at 551 (Barrett, J., concurring). Studies have found high detransition rates.[8] And most studies almost certainly understate the true rate of detransition because "those who abandon a transition are likely to stop talking to their doctors, and so disappear from the figures." *Skrmetti*, 605 U.S. at 542 n.7 (Thomas, J., concurring) (quoting *Trans Substantiation*, The Economist (Apr. 8, 2023)).

---

[8] *See, e.g.*, Christian J. Bachmann et al., *Gender Identity Disorders Among Young People in Germany: Prevalence and Trends*, 2013–2022, 121 Deutsches Ärzteblatt Int'l 370, 370 (2024) (noting "diagnosis persistence was below 50% in all age groups"); Isabel Boyd et al., *Care of Transgender Patients: A General Practice Quality Improvement Approach*, 10(1) Healthcare, at 11 (2022) (detransition rate of about 10%); *see generally* Lisa Littman et al., *Detransition and Desistance Among Previously Trans-Identified Young Adults*, 53 Arch. Sexual Behavior 57 (2024).

Plus, according to the American Psychological Association, "some people" "experience their gender identity as fluid." *Guidelines for Psychological Practice with Transgender and Gender Nonconforming People*, 70 Am. Psychologist 832, 836 (Dec. 2015), https://perma.cc/6FAS-676M. In short, "a person's gender identity may shift, and a person who is transgender now may not be transgender later." *Skrmetti*, 605 U.S. at 576 (Alito, J., concurring) (citation modified).

So once again, the district court unreasonably assumed a static situation, and reducing Roske's sentence because of the possibility of continued transgender identification for the next 30 years was error.

Last, the district court ignored the ill incentives caused by its reduction of Roske's sentence based on a recent change in gender identification. The court rightly acknowledged that "it's critical that a message of general deterrence be sent." JA151; *see* 18 U.S.C. § 3553(a)(2)(B). But letting a male criminal defendant off with an extraordinarily light sentence based on a recent female gender identification sends the opposite message. Because gender identity has been defined (per the American Psychological Association) as "a person's internal sense of being male, female or something else,"[9] it would hardly be surprising to find other defendants seeking lenient sentences based on a purported new gender identity. And again, medical

[9] *Understanding Transgender People, Gender Identity and Gender Expression* (July 8, 2024), https://perma.cc/JPG8-HURU.

authorities also say that "[f]or some people, gender identity can be fluid, shifting in different contexts."[10] Given the combination of a purely "internal sense" and fluidity in different contexts, it is doubtful that courts would have the capacity to meaningfully second-guess a person's statement of his own (current) gender identity. And to the extent that sentencing courts must "avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6), the decision below pressures other courts to similarly reduce sentences for anyone who professes a similar change in gender identity. The result would be inadequate deterrence of significant crimes—and substantively unreasonable sentences based on defendants' personal characteristics.

## CONCLUSION

As Justice Frankfurter put it, "[t]he right of a government to maintain its existence—self-preservation—is the most pervasive aspect of sovereignty." *Dennis*, 341 U.S. at 519 (opinion concurring in the judgment). But when faced with a near-assassination of a sitting U.S. Supreme Court Justice, the district court gave a drastically reduced sentence based on the defendant's gender identity and speculation about how federal prisons might handle that identity for decades to come. That sentence is substantively unreasonable, and this Court should vacate and remand for resentencing.

---

[10] Jason Rafferty, *Ensuring Comprehensive Care & Support for Transgender & Gender-Diverse Children & Adolescents*, 142 Pediatrics no. 4, at 2 (Oct. 2018), https://perma.cc/8PYT-CGUG.

Respectfully submitted,

*s/ Christopher Mills*

Nicholas Barry
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
(202) 964-3721
nicholas.barry@aflegal.org

Christopher Mills
SPERO LAW LLC
557 East Bay St. #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

Counsel for *Amicus Curiae*

JUNE 24, 2026

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 5,158 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: June 24, 2026

*s/ Christopher Mills*
Christopher Mills

## CERTIFICATE OF SERVICE

I, Christopher Mills, an attorney, certify that on this day the foregoing Brief was served electronically on all parties via CM/ECF.

Dated: June 24, 2026

*s/ Christopher Mills*
Christopher Mills